TH:ALK/SMS/SMS
F. #2018R00369

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA,

    - against -                                    Docket No. 22-CR-355 (ENV)

HECTOR ROSARIO,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - -X

THE GOVERNMENT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTIONS *IN LIMINE*

BREON PEACE
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Anna L. Karamigios
Sophia M. Suarez
Sean M. Sherman
Assistant U.S. Attorneys
      (Of Counsel)

TABLE OF CONTENTS

TABLE OF AUTHORITIES.......................................................................................................... ii

PRELIMINARY STATEMENT................................................................................................... 1

RELEVANT BACKGROUND...................................................................................................... 2

I.   The Investigation of the Bonanno and Genovese Crime Families ................................... 2

    A.   The Illegal Gambling Operations................................................................... 2

    B.   The Defendant's Knowledge of, and Participation in, the Bonanno Crime Family's Illegal Gambling Operations............................................................. 3

    C.   The Defendant's Relationship with the Bonanno Crime Family..................... 4

II.  The Defendant's Lies to the Federal Bureau of Investigation ........................................... 5

ARGUMENT ................................................................................................................................. 6

I.   The Proffered Evidence Should Be Admitted ................................................................... 6

    A.   Applicable Law .............................................................................................. 6

    B.   Discussion ...................................................................................................... 9

II.  The Court Should Preclude Evidence and Argument Concerning Possible Punishment and Collateral Consequences ................................................................................................. 13

III. The Defendant Should Be Precluded from Introducing Evidence Regarding His Lack of Criminal History .............................................................................................................. 15

IV. The Defendant Should Be Ordered To Disclose Rule 16(b) Discovery and Trial Exhibits To Be Introduced During the Government's Case ........................................................... 16

CONCLUSION............................................................................................................................. 19

TABLE OF AUTHORITIES

Cases                                                                                    Page(s)

Davis v. Alaska,
    415 U.S. 308 (1974) ................................................................... 15

Fischer v. United States,
    603 U.S. 480 (2024) ..................................................................... 6

Shannon v. United States,
    512 U.S. 573 (1994) ................................................................... 14

United States v. Aiyaswamy,
    No. 15-CR-568 (LHK), 2017 WL 1365228 (N.D. Cal. Apr. 14, 2017) ................ 18

United States v. Blackwell,
    853 F.2d 86 (2d Cir. 1988) ......................................................... 15

United States v. Blume,
    967 F.2d 45 (2d Cir. 1992) ......................................................... 14

United States v. Carboni,
    204 F.3d 39 (2d Cir. 2000) .......................................................... 7

United States v. Coonan,
    938 F.2d 1553 (2d Cir. 1991) ....................................................... 10

United States v. Coplan,
    703 F.3d 46 (2d Cir. 2012) .......................................................... 7

United States v. DiMarzo,
    80 F.3d 656 (1st Cir. 1996) ...................................................... 14-15

United States v. Edwards,
    631 F.2d 1049 (2d Cir. 1980) ....................................................... 14

United States v. Garcia,
    291 F.3d 127 (2d Cir. 2002) ......................................................... 8

United States v. Guerrero,
    882 F. Supp. 2d 463 (S.D.N.Y. 2011), aff'd, 560 F. App'x 110 (2d Cir. 2014) ...... 11

United States v. Harris,
    491 F.3d 440 (D.C. Cir. 2007) ...................................................... 16

United States v. Holden,
    No. 13-CR-444, 2015 WL 1514569 (D. Or. Mar. 19, 2015) ........................... 18

United States v. Huntress,
    No. 13-CV-199S, 2015 WL 631976 ................................................... 18

United States v. Inserra,
    34 F.3d 83 (2d Cir. 1994) ........................................................................... 7

United States v. Jimenez,
    789 F.2d 167 (2d Cir. 1986) ..................................................................... 13

United States v. Larkin,
    No. 2:12-CR-319 (GWF), 2015 WL 4415506 (D. Nev. July 20, 2015) ................................ 18

United States v. Levy,
    731 F.2d 997 (2d Cir. 1984) ................................................................. 8, 12

United States v. Lewis,
    110 F.3d 417 (7th Cir. 1997) ..................................................................... 14

United States v. Mickens,
    926 F.2d 1323 (2d Cir. 1991) ..................................................................... 8

United States v. Miller,
    641 F. Supp. 2d 161 (E.D.N.Y. 2009) ........................................................ 16

United States v. Napout,
    No. 15-CR-252 (PKC), 2017 WL 6375729 (E.D.N.Y. Dec. 12, 2017) ................................ 18

United States v. Ortiz,
    857 F.2d 900 (2d Cir. 1988) ..................................................................... 8

United States v. Paccione,
    949 F.2d 1183 (2d Cir. 1991) ..................................................................... 16

United States v. Roldan-Zapata,
    916 F.2d 795 (2d Cir. 1990) ..................................................................... 13

United States v. Rosa,
    11 F.3d 315 (2d Cir. 1993) ..................................................................... 9

United States v. Serrano,
    640 F. App'x 94 (2d Cir. 2016) ..................................................................... 11

United States v. Siegel,
    536 F.3d 306 (4th Cir. 2008) ..................................................................... 12

United States v. Smothers,
    652 F. Supp. 3d 271 (E.D.N.Y.) ..................................................................... 18

United States v. Swenson,
    298 F.R.D. 474 (D. Idaho 2014) ..................................................................... 18

United States v. Thai,
    29 F.3d 785 (2d Cir. 1994) ..................................................................... 7

United States v. Thomas,
    116 F.3d 606 (2d Cir. 1997) ................................................................. 15

United States v. Towne,
    870 F.2d 880 (2d Cir. 1989) ................................................................. 7

United States v. Watts,
    934 F. Supp. 2d 451 (E.D.N.Y. 2013) ................................................. 14

United States v. Willoughby,
    860 F.2d 15 (2d Cir. 1988) ................................................................... 12

Statutes

18 U.S.C. § 1001 .................................................................................... 1
18 U.S.C. § 1512 .................................................................................... 1

Other

Fed. R. Crim. P. 16 ................................................................................ 17
Fed. R. Crim. P. 26.2 ............................................................................. 19
Fed. R. Evid. 402 .................................................................................. 14
Fed. R. Evid. 403 .................................................................................. 14, 16
Fed. R. Evid. 405 .................................................................................. 15

PRELIMINARY STATEMENT

For years, the defendant Hector Rosario was a Nassau County Police Department Detective on the Bonanno crime family's payroll.  The Bonanno crime family paid the defendant to, among other things, shut down illegal gambling parlors operated by other crime families, including the Genovese and Gambino crime families.  In January 2020, during a federal grand jury investigation into racketeering activity involving the Bonannos and Genovese, the defendant was interviewed by agents with the Federal Bureau of Investigation about members and associates of those crime families and illegal gambling parlors they operated, among other topics.  In an effort to obstruct the ongoing investigation, the defendant lied.  For those lies, the defendant is charged with obstruction of justice, in violation of 18 U.S.C. § 1512(c)(2) and making false statements to Special Agents of the Federal Bureau of Investigation, in violation of 18 U.S.C. § 1001(a)(2).

In advance of trial, which is scheduled to begin on February 24, 2025, the government submits this memorandum of law in support of its motion in limine for an order finding certain evidence offered by the government admissible at trial.

As set forth herein, the government intends to offer evidence of the Bonanno, Genovese and Gambino crime family gambling operations and the government's investigation into those operations; the defendant's knowledge of those gambling operations and his efforts to shut down competition on behalf of the Bonanno crime family; and the nature and extent of the defendant's relationship with the Bonanno crime family.  Such evidence is direct proof of the charged crimes, as it tends to prove the defendant's knowledge and intent in committing the charged obstruction crimes; demonstrates the existence of a relationship between the defendant and cooperating witnesses that was criminal in nature; and provides necessary background to inform the jury of the context for the charged crimes.

The government also moves in limine for an order precluding the defendant from introducing evidence, testimony or argument related to the consequences of his potential conviction or to his lack of criminal history and non-relevant background.

Finally, the government moves the Court to order the defendant to disclose Rule 16(b) materials and trial exhibits.

For the reasons set forth below, the government's motions in limine should be granted.

<u>RELEVANT BACKGROUND</u>

I.     The Investigation of the Bonanno and Genovese Crime Families

A.     The Illegal Gambling Operations

At trial, the evidence will show that in 2020, the government had a years' long federal grand jury investigation into both the Bonanno and Genovese crime families and their involvement in, and operation of, numerous illegal gambling parlors in Queens and Long Island, New York, among other racketeering activity.  That investigation, which culminated in two federal indictments in August 2022, ultimately revealed that, from approximately 2012 to at least August 2022, the Bonanno crime family operated illegal gambling businesses inside various coffee shops and sports clubs throughout Queens and Long Island, including La Nazionale Soccer Club, Glendale Sports Club, and Soccer Club.  See United States v. Gabriele, et al, No. 22-CR-355 (ENV), ECF No. 1.  For their part, from approximately 2012 to at least August 2022, the Genovese crime family operated illegal gambling businesses out of their own locations in Queens and Long Island, including Sal's Shoe Repair and the Centro Calcio Italiano Club.  See United States v. Macario, et al, No. 22-CR-356 (ENV), ECF No. 1.  In addition, as also charged in each indictment, the Bonanno and Genovese crime families jointly operated a lucrative illegal gambling business inside the Gran Caffe in Lynbrook, New York, for nearly a decade.  These gambling parlors were

2

the lifeblood of the crime families and generated substantial revenue, which was distributed to higher ranking members of each crime family.

B.    <u>The Defendant's Knowledge of, and Participation in, the Bonanno Crime Family's Illegal Gambling Operations</u>

The government intends to introduce the following evidence showing the defendant's knowledge of and participation in the Bonanno crime family's illegal gambling operations that forms the basis and context for the charged crimes.  Such evidence will include the testimony of at least two cooperating witnesses (hereinafter, "CW #1" and "CW #2").

Both CW #1 and CW #2 are expected to testify that members of the Bonanno crime family paid the defendant to attempt to shut down rival gambling parlors, including by visiting rival gambling establishments in his capacity as a detective and conducting at least one fake police raid, among other means.  Specifically, CW #1, who was an inducted member of the Bonanno crime family, is expected to testify that, in approximately 2013 or 2014, he and CW #2 instructed the defendant to shut down a Genovese-run gambling parlor operated by Salvatore Rubino and located within Sal's Shoe Repair.  The defendant was told that he would be compensated for this false police raid.  CW #1 understood that the defendant did what was asked of him—he and his associates barged into Sal's Shoe Repair, acting as though they were police officers conducting a search and threatened Rubino about shutting down the illegal gambling.

Similarly, CW #2, who was an associate of the Bonanno crime family, is expected to testify that he directed the defendant to shut down Sal's Shoe Repair as well as other illegal gambling parlors operated by the Gambino crime family.  CW #2 is expected to testify that the Bonanno crime family, through CW #2, paid the defendant for this work and that the defendant followed through on these requests.  For example, CW #2 was inside Sal's Shoe Repair when the defendant conducted the fake police "raid" of that location, as he was directed to do.  CW #2

3

witnessed the defendant and his associates barge in, break one of the gambling machines and demand that Rubino to tell them where he could find "Joe Box," a Genovese crime family associate who collected gambling proceeds from that location. With respect to the other competing gambling parlors, CW #2 is expected to testify that the Bonanno crime family, through CW #2, paid the defendant to attempt to shut down at least two Gambino crime family illegal gambling parlors in 2013 or 2014.

In addition to this evidence, the government also expects to call law enforcement witnesses who will testify that—around the same time—in May 2014, the defendant provided a "tip" to other Nassau County Police Department officers about an illegal gambling location operated by the Gambino crime family, although the defendant's own work had nothing to do with such activity.

C.    The Defendant's Relationship with the Bonanno Crime Family

The government intends to introduce the following evidence showing the nature and extent of the defendant's relationship with CW #1 and CW #2, each of whom is associated with the Bonanno crime family as discussed above, because such evidence shows the defendant's relationship of trust with these witnesses and completes the story of the charged crimes.

CW #2 is expected to testify that he and the defendant met in approximately 2008 or 2009 and that they became friends who trusted one another. In light of that relationship, CW #2 enlisted the defendant, and the defendant agreed to help CW #2, with additional matters beyond shutting down rival gambling parlors. For instance, CW #2 is expected to testify—and audio recordings of the defendant are expected to corroborate—that, in 2018, CW #2 asked the defendant to use law enforcement databases to look up an individual whom CW #2 made the defendant believe was cooperating and the defendant did so. Around the same time, CW #2 brought the defendant to his marijuana grow house which was filled with marijuana plants, and the defendant

4

offered to help CW #2 transport the marijuana before he got caught with it by law enforcement. The defendant also offered to help CW #2 find a buyer for the large amounts of marijuana. Similarly, the defendant also helped CW #2 obtain heroin and discussed a plan to conduct a fake police raid on a drug dealer in Hempstead in order to obtain drugs and money.

CW #1 is expected to testify that he trusted the defendant in connection with the gambling plot because the defendant was close friends with CW #2, who CW #1 trusted. CW #1 was introduced to the defendant through CW #2, and understood that he was a "dirty cop." In addition to attempting to shut down rival gambling parlors, CW #1 is expected to testify that the defendant demonstrated his loyalty to the Bonanno crime family when the defendant came to CW #1's house and alerted him that the defendant had seen a photograph of CW #1 at the Nassau County Police Department—i.e., that CW #1 was under criminal investigation. The defendant warned CW #1 about the investigation and advised him not to talk on his cellphone.

II.    The Defendant's Lies to the Federal Bureau of Investigation

On January 27, 2020, during the government's above-described investigation into illegal gambling conducted by the Bonanno and Genovese crime families, Special Agents from the Federal Bureau of Investigation ("FBI") interviewed the defendant. During the interview, the FBI Special Agents asked the defendant about members and associates of the Bonanno and Genovese crime families and illegal gambling businesses operated by those crime families, including Sal's Shoe Repair, among other topics. As charged in the indictment, the defendant denied knowing CW #1—who, as described above, the defendant had warned about a criminal investigation—and the defendant stated he was not familiar with Sal's Shoe Repair—where, as described above, the defendant had executed a fake police "raid." Indeed, the defendant denied ever having been to any gambling location; he denied recognizing a photograph of Salvatore

5

Rubino, the owner of Sal's Shoe Repair, the target of the fake raid; and he denied having information about illegal gambling activity.

The defendant also made several additional false statements to the FBI during the interview. Among other lies, he denied using his position as a Nassau County Police Detective to acquire information about an individual at the behest of CW #2, as discussed above. The defendant stuck to that lie even after the FBI Special Agents played him a recording of a phone call in which the defendant used poorly disguised, coded language to relay to CW #2 the information he had uncovered about the potential cooperator. The defendant also told the FBI Special Agents he had never been to a marijuana grow house maintained by CW #2.

<u>ARGUMENT</u>

I.    <u>The Proffered Evidence Should Be Admitted</u>

The government moves to admit the proffered evidence of the acts of the defendant and other members and associates of the Bonanno crime family, as direct evidence of the charged crimes or, in the alternative, pursuant to Federal Rule of Evidence 404(b).

A.    <u>Applicable Law</u>

1.    <u>The Charged Crimes</u>

a.    <u>Obstruction of an Official Proceeding</u>

To prove a violation of Section 1512(c)(2), the government must prove: (1) the defendant obstructed, influenced, or impeded an official proceeding, or attempted to do so; (2) in the course of doing so, the defendant committed or attempted to commit an act that impaired the integrity or rendered unavailable records, documents, objects, or other things for use in the official proceeding; (3) the defendant intended to impair the integrity of or render unavailable such records, documents, objects, or other things for use in the official proceeding; and (4) the defendant acted corruptly. <u>See</u> <u>Fischer v. United States</u>, 603 U.S. 480 (2024).

b.    <u>Making False Statements</u>

To prove a violation of Section 1001(a)(2), the government must prove: (1) the defendant made a statement or representation; (2) the statement or representation was material; (3) the statement or representation was false, fictitious or fraudulent; (4) the false, fictitious or fraudulent statement or representation was made knowingly and willfully; and (5) the statement or representation was with respect to a matter within the jurisdiction of the government of the United States.  <u>See</u> Sand, 2 Modern Federal Jury Instructions - Criminal ¶ 36.01 (2019) (collecting cases); <u>see also</u> <u>United States v. Coplan</u>, 703 F.3d 46 (2d Cir. 2012).

2.    <u>Direct Evidence</u>

Evidence of uncharged acts, even uncharged acts that amount to criminal activity, is admissible as direct evidence of the crimes charged in the indictment.  <u>See, e.g.</u>, <u>United States v. Carboni</u>, 204 F.3d 39, 44 (2d Cir. 2000); <u>United States v. Thai</u>, 29 F.3d 785, 812 (2d Cir. 1994); <u>United States v. Towne</u>, 870 F.2d 880, 886 (2d Cir. 1989).  "'[E]vidence of uncharged criminal activity is not considered other crimes evidence under [Rule] 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial.'"  <u>Carboni</u>, 204 F.3d at 44 (quoting <u>Gonzalez</u>, 110 F.3d at 942).

The Second Circuit has interpreted this category of evidence to include acts that provide necessary background or context for a charged crime.  <u>See, e.g.</u>, <u>United States v. Inserra</u>, 34 F.3d 83, 89 (2d Cir. 1994) (noting that evidence of other "bad acts may be admitted to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense").

3.    Other Acts as Direct Evidence of the Charged Crimes Under Rule 404(b)

Evidence of uncharged crimes and other acts may also be admitted pursuant to Rule 404(b) for numerous permissible purposes, including to prove motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.  Fed. R. Evid. 404(b)(2). See United States v. Ortiz, 857 F.2d 900, 903 (2d Cir. 1988).

The Second Circuit has emphasized that Rule 404(b) is a rule of broad reach and liberal application, and applies an "inclusionary approach" to admitting "other acts" evidence under Rule 404(b).  See United States v. Garcia, 291 F.3d 127, 136 (2d Cir. 2002) (citing United States v. Pitre, 960 F.2d 1112, 1118 (2d Cir. 1992)); see also United States v. Levy, 731 F.2d 997, 1002 (2d Cir. 1984) ("We have adopted the inclusionary or positive approach to [404(b)]; as long as the evidence is not offered to prove propensity, it is admissible.").  A party must satisfy three requirements for evidence of "other crimes, wrongs or acts" to be admitted under the Rule.  First, the evidence must be offered for a purpose other than to prove the defendant's bad character or criminal propensity.  See United States v. Mickens, 926 F.2d 1323, 1328 (2d Cir. 1991) (citing United States v. Colon, 880 F.2d 650, 656 (2d Cir. 1989)).  Such permissible purposes include to prove motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.  Fed. R. Evid. 404(b)(2).  Second, the evidence must be relevant under Rules 401 and 402 and more probative than prejudicial in accordance with Rule 403.  See Mickens, 926 F.2d at 1328 (citing Ortiz, 857 F.2d at 903); Levy, 731 F.2d at 1002.  Third, if the defendant requests that the jury be instructed as to the limited purpose for which the government's evidence is being admitted, the court must furnish such an instruction.  See Mickens, 926 F.2d at 1328-29; Levy, 731 F.2d at 1002.

The Second Circuit has repeatedly held that evidence of uncharged crimes may be admitted at trial under Rule 404(b) to establish the existence and development of a criminal

relationship between coconspirators.  See, e.g., United States v. Rosa, 11 F.3d 315, 333-34 (2d Cir. 1993) (holding that evidence of co-defendants' prior dealings over a 14-year period, which included the commission of stolen property and narcotics offenses, "was properly admitted to explain how the illegal relationship between the two [defendants] developed and to explain why [one defendant] . . . appointed [the other defendant] . . . to a leading position in the [narcotics] Organization"); Pitre, 960 F.2d at 1119 ("Prior act evidence may be admitted to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between participants in the crime developed.").

    B.    Discussion

        At trial, the government intends to offer evidence of: (1) the above-described Bonanno, Genovese and Gambino crime family gambling operations and the government's investigation into those operations; (2) the defendant's knowledge of those gambling operations and his efforts to shut down competition on behalf of the Bonanno crime family; and (3) the nature and extent of the defendant's relationship with the Bonanno crime family.  Such evidence will consist primarily of witness testimony, consensual recordings, and photographs of individuals and places.

        1.    The Evidence is Admissible as Direct Evidence

        First, the evidence that the defendant attempted to shut down illegal gambling parlors at the behest of CW #1 and CW #2, as well as evidence regarding the crime families' illegal gambling operations, is admissible as direct evidence of the charged crimes.  Such evidence forms the factual predicate to the obstruction charges against the defendant and provides critical background for the government investigation the defendant sought to obstruct.  See United States v. Servider, No. 15-CR-174 (ENV), ECF No. 163 (May 10, 2018) (finding that evidence of the defendant's own purported involvement in the underlying scheme was "necessary to complete the

9

story of how [the defendant] came to obstruct justice").  To truncate the narrative of the trial without offering any explanation for the extent of the defendant's involvement with the Bonanno crime family, and his demonstrated loyalties to them, would confuse the jury and provide an incomplete picture of relevant events.  Particularly here, where the defendant was a police officer at the time of the charged crimes and underlying schemes, the jury needs the full context to understand the defendant's actions as charged in the indictment.  See United States v. Coonan, 938 F.2d 1553, 1561 (2d Cir. 1991) (explaining that "[b]ackground evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed" (citation and internal quotation marks omitted)).

Second, evidence of the defendant's involvement in the illegal gambling operations with the Bonanno crime family proves that the defendant had great motive to interfere with the grand jury investigation and thus that his motive was corrupt as required for conviction under Section 1512(c)(2).  Specifically, the defendant's own participation in the underlying schemes shows that the defendant "knew that his actions were likely to affect an ongoing investigation." United States v. Brooks, 828 F. App'x 9, 11-12 (2d Cir. 2020) (summary order) (finding "there was more than sufficient evidence for the jury to conclude that [the defendant] knew that his actions were likely to affect an ongoing investigation" because he was aware "that officials were investigating [a] scheme in which he participated and about which he possessed incriminating evidence" (alteration and internal quotation marks omitted); see also United States v. Binday, 804 F.3d 558, 591 (2d Cir. 2015) (finding "sufficient evidence of foreseeability" where the defendant "knew that the subject of the FBI's inquiries was in fact a . . . scheme in which he participated and about which he possessed incriminating documents").

10

Similarly, the proffered evidence of the defendant's (1) efforts to warn CW #1 that he was potentially under criminal investigation; (2) willingness to help CW #2 move and sell large quantities of marijuana; and (3) use of his station as a detective to dig up information for CW #2 about a potential cooperating witness, is admissible because it explains the depth of the defendant's relationship and loyalty to the cooperating witnesses which further tends to show his motive in attempting to obstruct the grand jury investigation in 2020. See, e.g., United States v. Serrano, 640 F. App'x 94, 97-98 (2d Cir. 2016) (affirming admission of evidence that cooperating witness and defendant participated in earlier theft together because it "permitted the jury to understand why, when [they] met in 2012, [the cooperating witness] would feel comfortable offering to sell [the defendant] drugs that had just been stolen, while [the defendant] sufficiently trusted [the cooperating witness] to say that he 'wanted in' and, therefore, quickly entered into the charged robbery conspiracy"); United States v. Rivera, No. 13-CR-149 (KAM), 2015 WL 1875658, at *15 (E.D.N.Y. Apr. 22, 2015) (admitting evidence that cooperating witness met the defendant in prison because it "'add[ed] context and dimension' . . . to how [the defendant's] relationship and trust with [the cooperating witness] developed and [wa]s properly admitted as evidence that provide[d] background and context for the charged racketeering conduct" (quoting United States v. Gonzalez, 110 F.3d 936, 941 (2d Cir. 1997))); United States v. Guerrero, 882 F. Supp. 2d 463, 492-93 (S.D.N.Y. 2011), aff'd, 560 F. App'x 110 (2d Cir. 2014) (finding evidence related to the defendants' prior illicit transactions with their co-conspirators, including their commission of robberies, shootings and possession of guns, was "plainly admissible to explain the development of the illegal relationship between the defendants and their co-conspirators and explain [t]he mutual trust that existed between the coconspirators (including the cooperating Government Witnesses)").

Accordingly, the Court should admit evidence described above as direct evidence of the charged crime.

2.      The Evidence is Admissible under Rule 404(b)

Alternatively, even if the Court finds that any of the proffered evidence is not direct evidence of the charged crimes, such evidence is admissible under Rule 404(b) because it shows the defendant's motive, opportunity, intent, absence of mistake, or lack of accident in attempting to obstruct the investigation and in making false statements to the FBI Special Agents.  Fed. R. Evid. 404(b); see also Levy, 731 F.2d at 1002.  Such evidence clearly shows that the defendant had a motive to obstruct and to lie, in order to prevent law enforcement from collecting incriminating evidence related to his involvement in the activities of the Bonanno crime family. See United States v. Willoughby, 860 F.2d 15, 27 (2d Cir. 1988) ("[W]hen a defendant has been charged with attempted or actual obstruction of justice with respect to a given crime, evidence of the underlying crime and the defendant's part in it is admissible to show the motive for his efforts to interfere with the judicial processes.").  In Willoughby, the Second Circuit affirmed, under Rule 404(b), the admission of evidence that the defendants "had participated in [a] robbery" as "highly probative of their motive, and the intensity of that motive, to seek to prevent certain witnesses from testifying at their trial for robbery."  860 F.2d at 28; accord United States v. Siegel, 536 F.3d 306, 317 (4th Cir. 2008) (finding evidence of other crimes admissible under Rule 404(b) as "relevant to establishing [the defendant's] motive for killing [a witness to those other crimes]").  Similarly, this evidence shows an "absence of mistake" or "accident," tending to disprove that defendant's statements—including his purported failure to recall certain information—were somehow an innocent mistake.

12

3.      The Probative Value of the Proffered Evidence Outweighs Any Prejudice under Rule 403

Whether as direct evidence or Rule 404(b) evidence, the proffered evidence is unmistakably probative as to the defendant's guilt, and it is not unfairly prejudicial simply because it is "harmful" to him.  United States v. Jimenez, 789 F.2d 167, 171 (2d Cir. 1986).  Indeed, the evidence at issue does "not involve conduct any more sensational or disturbing" than the crimes with which the defendant is charged.  United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990); see also Willoughby, 860 F.2d at 28 (concluding that "the trial court did not abuse its discretion in concluding that [the] probative value [of evidence the defendants committed a robbery] outweighed any undue prejudice" in prosecution for obstruction of justice).  Admission of such evidence, therefore, would not violate Rule 403, and there thus is no basis for exclusion.

Accordingly, the Court should permit the government to introduce the proffered evidence at trial.

II.      The Court Should Preclude Evidence and Argument Concerning Possible Punishment and Collateral Consequences

The Court should preclude the defendant from referencing at trial any consequences of his potential conviction.  While the defense has not suggested that it intends to introduce any discussion of these consequences at trial, out of an abundance of caution, the government moves to preclude at trial any discussion of the defendant's possible punishment or collateral consequences of conviction.  Evidence regarding possible consequences the defendant may face if convicted should be precluded because it is not relevant.  Pursuant to Rule 401 of the Federal Rules of Evidence, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Generally, relevant evidence is admissible and "[i]rrelevant evidence is not admissible."  See Fed. R. Evid. 402.  "[T]he district court has broad discretion to exclude evidence that is irrelevant . . . ."

13

United States v. Edwards, 631 F.2d 1049, 1051 (2d Cir. 1980); see also Fed. R. Evid. 403.  The

defendant's punishment is not a fact "of consequence" to be determined at trial.  Therefore, any

evidence of those issues is not relevant.  See Shannon v. United States, 512 U.S. 573, 579 (1994)

("Information regarding the consequences of a verdict is . . . irrelevant to the jury's task.").

Such evidence is not only irrelevant, but it "invites [jurors] to ponder matters that

are not within their province, distracts them from their factfinding responsibilities, and creates a

strong possibility of confusion."  Id.  Indeed, jurors are routinely instructed not to consider a

defendant's punishment in determining a defendant's guilt.  See generally Sand, et al., Modern

Federal Jury Instructions ("Sand"), Instruction 9-1 (2017 ed.); see also Shannon, 512 U.S. at 579

(a jury "should be admonished to reach its verdict without regard to what sentence might be

imposed [and] not to consider the consequences of their verdicts . . . ." (internal citation omitted));

United States v. Watts, 934 F. Supp. 2d 451, 464 (E.D.N.Y. 2013) ("[I]t is well-established

precedent that jurors should not be informed about the possible consequences of their verdict due

to the likelihood that prejudice, unfairness, and confusion that would result.").

Courts have routinely precluded evidence of the potential sentences defendants face

on the grounds that such evidence is irrelevant, unfairly prejudicial and outside the province of the

jury.  See, e.g., United States v. Blume, 967 F.2d 45, 49 (2d Cir. 1992) ("Federal courts usually

instruct juries not to consider a verdict's consequences"); United States v. Lewis, 110 F.3d 417,

422 (7th Cir. 1997) (holding that district court correctly refused to permit defendant to argue about

the severity of his possible punishment); United States v. DiMarzo, 80 F.3d 656, 660 (1st Cir. 1996)

(district court "soundly excluded" evidence of a potentially harsh sentence because such evidence

"would have necessitated an unwarranted departure from the fundamental division of

responsibilities between judge and jury.").  In short, guilt should determine punishment, not the

other way around.  See United States v. Thomas, 116 F.3d 606, 614 (2d Cir. 1997) ("Nullification is, by definition, a violation of a juror's oath to apply the law as instructed by the court . . . .  We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that the courts may permit it to occur when it is within their authority to prevent."). Courts have consistently recognized that juries have no right to nullify, and "trial courts have the duty to forestall or prevent such conduct."  Id. at 616.  Therefore, the Court should preclude the defendant from referencing potential punishment and collateral consequences at trial.[1]

III.  The Defendant Should Be Precluded from Introducing Evidence Regarding His Lack of Criminal History

The Federal Rules of Evidence ordinarily prohibit witnesses from proving good character through specific instances of conduct.  See Fed. R. Evid. 405(a).  The Second Circuit has concluded, however, that evidence of a lack of prior convictions or arrests is admissible for the purpose of gauging the credibility of a testifying witness.  See United States v. Blackwell, 853 F.2d 86, 88 (2d Cir. 1988) (noting the "relatively low probative value" of this evidence).  Thus, such evidence becomes relevant and admissible if—and only if—the defendant testifies, and even then for the limited purpose of providing background information relating to his credibility as a witness.

In addition, "[d]istrict courts have broad discretion to balance the probative value of evidence against possible undue sympathy or bias as well as prejudice."  United States v. Miller, 641 F. Supp. 2d 161, 167 (E.D.N.Y. 2009).  Courts may exclude evidence if it has "an undue

---

[1]     To the extent that the defendant exercises his right to testify, the government should be permitted to cross-examine him regarding the potential consequences of conviction that he faces because, under those circumstances, it is relevant to the defendant's credibility as a witness.  See Davis v. Alaska, 415 U.S. 308, 316 (1974) (discussing use of cross-examination to reveal "possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues . . . in the case at hand.  The partiality of a witness is subject to exploration at trial, and is always relevant as discrediting the witness and affecting the weight of his testimony." (internal quotation omitted)).

tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one[.]" Fed. R. Evid. 403, Adv. Comm. Notes. Indeed, when evidence is of limited probative value, it should be excluded if it has the "potential to engender sympathy in an inappropriate effort to excuse defendant's commission of the charged offenses." Miller, 641 F. Supp. 2d at 167; see also United States v. Paccione, 949 F.2d 1183, 1201 (2d Cir. 1991) (affirming preclusion of evidence that the defendant had son with cerebral palsy); United States v. Battaglia, No. S9 05 Cr. 774 (KMW), 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008) (precluding "evidence of Defendant's family and personal status" as not "relevant to the issue of whether Defendant committed the crimes charged"); United States v. Harris, 491 F.3d 440, 447 (D.C. Cir. 2007) (affirming preclusion of evidence designed "mainly to cast [the defendant] in the sympathetic light of a dedicated family man").

Consistent with Blackwell, the government requests that the defendant be precluded from informing the jury of his lack of criminal history, unless and until he chooses to testify. Counsel should not be permitted to advise the jury of the defendant's lack of criminal history in opening statements, through cross-examination or otherwise.

Accordingly, the defendant should be precluded from using the absence of a prior criminal record, or any other evidence of specific instances of good conduct to prove good character. To allow otherwise would confuse the issues under consideration, in violation of Federal Rule of Evidence 403, and violate Rule 405(b)'s restrictions against proving good character through specific instances of conduct.

IV.    The Defendant Should Be Ordered To Disclose Rule 16(b) Discovery and Trial Exhibits To Be Introduced During the Government's Case

Rule 16(b) of the Federal Rules of Criminal Procedure governs a defendant's disclosures in a criminal case. In relevant part, it requires the defendant to provide the government

with documents and records that the defendant "intends to use . . . in the defendant's case-in-chief at trial." Fed. R. Crim. P. 16(b)(1)(A).

Rule 16 does not require a defendant to disclose documents he intends to use for purposes of cross-examining a government witness. However, to the extent that a defendant seeks to admit into evidence a document while cross-examining a witness during the government's case-in-chief in order to affirmatively support the defendant's theory of the case, such a document falls within the ambit of Rule 16. As explained in United States v. Hsia, No. 98-CR-0057 (PLF), 2000 WL 195067, at *2 (D.D.C. Jan. 21, 2000):

> A "case-in-chief" is defined as "[t]he part of a trial in which a party presents evidence to support its claim or defense." Black's Law Dictionary 207 (7th ed. 1999). Defendant's cross-examination of government witnesses, and the evidence introduced during that cross-examination, certainly may be used to support her defense . . . . The cross-examination of these and other government witnesses therefore is properly seen as part of defendant's case-in-chief if it buttresses her theory of the case.

Id. The Hsia court distinguished documents introduced by a defendant via a government witness—which do fall within Rule 16 and should be disclosed—from documents used by a defendant "merely to impeach a government witness, and not as affirmative evidence in furtherance of [the defendant's] theory of the case, it is not part of [the defendant's] case-in-chief." Id. at *2 n.1.

Courts in this district have repeatedly held that the defense must produce in advance any "exhibit that will not be used solely for impeachment purposes," even if the defense intends to introduce such exhibit during cross-examination of a government witness. United States v. Chen et al, No. 22-CR-158 (ENV), ECF No. 366 (Oct. 17, 2024) (directing defendants to disclose such material even if it was produced by the government in discovery); United States v. Smothers, 652 F. Supp. 3d 271, 290 (E.D.N.Y.); see also United States v. Napout, No. 15-CR-252 (PKC), 2017 WL 6375729, at *7 (E.D.N.Y. Dec. 12, 2017) (holding that "Rule 16 requires Defendants to

identify all non-impeachment exhibits they intend to use in their defense at trial, whether the exhibits will be introduced through a government witness or a witness called by a Defendant."); United States v. Laquan Warren, No. 22-CR-231 (DLI), ECF Order (Sept. 6, 2023).   That obligation extends to material produced by the government in discovery that the defense intends to use as an exhibit.  See Smothers, 652 F. Supp. 3d at 308 (requiring advance production of defense exhibits "regardless of whether such an exhibit is in the defense's sole custody"). Numerous other district courts have interpreted Rule 16(b) similarly.  See United States v. Swenson, 298 F.R.D. 474, 477 (D. Idaho 2014) ("Defendants have a duty to produce any exhibits they intend to use at trial during cross examination of a government witness other than for impeachment purposes."); United States v. Holden, No. 13-CR-444, 2015 WL 1514569, at *4 (D. Or. Mar. 19, 2015) (holding, based on Swenson and Hsia, that a defendant must disclose non-impeachment substantive evidence that the defendant seeks to use in examination of government or defense witnesses); United States v. Larkin, No. 2:12-CR-319 (GWF), 2015 WL 4415506, at *5 (D. Nev. July 20, 2015) (stating that the approach adopted in Holden, Swenson, and Hsia is "consistent with the structure and integrity of Rule 16(b) as a whole"); United States v. Aiyaswamy, No. 15-CR-568 (LHK), 2017 WL 1365228, at *5 (N.D. Cal. Apr. 14, 2017) (same); United States v. Huntress, No. 13-CV-199S, 2015 WL 631976, at *34, n.1 (W.D.N.Y. Feb. 13, 2015) (observing that "it is not clear that defendants' case-in-chief would be limited to any case they may present after the government rests").

Here, to date, the defendant has not disclosed any document he intends to introduce at trial.  Accordingly, to avoid gamesmanship and unfair surprise, the government respectfully requests that the Court order the defendant to identify any exhibits he intends to introduce during

the government's case or any defense case no later than February 10, 2025, which is two weeks prior to the start of the trial.

Finally, the government respectfully submits that, to avoid delay in the upcoming trial, the Court should set a schedule for disclosure of the statements of any defense witnesses other than the defendants themselves.  See Fed. R. Crim. P. 26.2.  The government proposes that Rule 26.2 material should be provided no later than two days before a witness testifies, which is the same schedule this Court set in United States v. Chen et al, 22-CR-158 (ENV) ECF No. 366 (Oct. 17, 2024).

## CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court grant the government's motions in limine.


Dated:      Brooklyn, New York
            January 10, 2025

                                        Respectfully submitted,

                                        BREON PEACE
                                        UNITED STATES ATTORNEY
                                        Eastern District of New York
                                        271 Cadman Plaza East
                                        Brooklyn, New York 11201


                              By:      _____/s/_____
                                        Anna L. Karamigios
                                        Sophia M. Suarez
                                        Sean M. Sherman
                                        Assistant United States Attorneys
                                        (718) 254-7000